UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES A. PICKENS,

        Petitioner,        Case No. 04-CV-73366

v.        HONORABLE ARTHUR J. TARNOW

CAROL HOWES

        Respondent.
_____/

**OPINION AND ORDER DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT, APPOINTING COUNSEL FOR PETITIONER, AND SETTING DEADLINES FOR SUPPLEMENTAL AND RESPONSIVE PLEADINGS.**

    Petitioner James A. Pickens, a state prisoner currently confined at Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2244.  The matter is before the Court on Respondent Carol Howes' motion for summary judgment and dismissal of the petition for failure to comply with the statute of limitations.  For the reasons set forth below, the Court denies the motion for summary judgment, appoints counsel for Petitioner, and orders Petitioner and Respondent to file the appropriate pleadings addressing the questions indicated below.

I. **Background**

    Petitioner pled guilty to second-degree murder, Mich. Comp. Laws § 750.317,

1

and prison escape, Mich. Comp. Laws § 750.193, on March 30, 1981, in Washtenaw County Circuit Court, before Judge William Ager. The plea bargain was that the original first-degree murder charge, Mich. Comp. Laws § 750.316, and habitual offender charges, Mich. Comp. Laws §769.10 *et seq.,* would be dismissed; that the escape sentence would run concurrent with the murder sentence, though both would be consecutive to the sentence Petitioner was serving at the time of escape; and that Petitioner would be sentenced to no more than 40 to 60 years on the murder charge. He was sentenced on April 24, 1981, to 40 to 60 years for the murder conviction and to 3 years 4 months to 5 years for the escape conviction. Petitioner was twenty-one years old, with limited intelligence and a history of mental illness.[1]

Petitioner was told at least six times during the plea proceeding, by the judge and by his defense attorney, that the escape and murder sentences would be concurrent to each other, and this was repeatedly confirmed on the record by the assistant prosecuting attorney, Brian Mackie. At the sentencing, defense counsel

---

[1] At the plea proceeding, the judge indicated that an insanity defense had been anticipated. A 1980 psychiatric evaluation attached to a pleading included in the Rule 5 materials provides that, during the pendency of the proceedings, Petitioner was acutely psychotic and twice declared incompetent and sent to the Forensic Center for treatment. Petitioner had been hospitalized and/or treated for mental illness from the time he was eleven until he was fifteen and a half. He had an IQ of approximately 80. The psychiatrist preparing the report concluded that Petitioner was now "marginally competent," that he was suffering from schizophrenia, borderline mental retardation, and possibly organic brain disease. As far as criminal responsibility, he found that Petitioner came within the legal definition of insanity.

again repeated that these sentences were to be concurrent, and the judge in pronouncing sentence provided that they were concurrent.[2]

However, the written judgment of sentence for the escape conviction, which would have been prepared immediately after the sentencing proceeding and which controls how much prison time a defendant serves, provides that the escape sentence is consecutive to the murder sentence. No doubt, the change was made to make the sentence comport with Mich. Comp. Laws § 768.7a,[3] which mandated consecutive sentencing. Despite the fact that the plea agreement was thereby violated and Petitioner's sentence increased, there is no indication that Petitioner or his attorney were notified of the change and given an opportunity to renegotiate the sentence agreement or withdraw the plea.

---

[2] Plea and Sentence Transcript, pp. 4,12,15, 22, 23.

[3] At the time of Petitioner's sentencing, the statute provided in pertinent part that:

> A person who is incarcerated in a penal or reformatory institution in this state, or who escapes from that institution, and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or reformatory institution in this state shall, upon conviction thereof, be subject to sentence therefor in the manner provided by law for such crimes. The term of sentence imposed for the crime shall commence at the expiration of the term or terms of sentence which the person is serving or has become liable to serve in a penal or reformatory institution in this state.

Although there have been subsequent minor amendments, consecutive sentencing is still required.

*Pickens v. Howes,* No. 04-73366
Page 4 of 13

Petitioner, through appointed appellate counsel, appealed as of right, raising only a speedy trial issue, presumably unaware of the change in sentence. The Michigan Court of Appeals affirmed on December 13, 1982, *People v. Pickens* (No. 58209). It is unclear whether that opinion was appealed further.[4]

Although the Washtenaw County Circuit Court docket entries indicate that a motion for correction of sentence was filed and denied in 1984, the Rule 5 materials do not indicate the nature of the claimed error.[5]

Petitioner filed a motion for relief from judgment in the trial court, Mich. Ct. Rule 6.502*,* on September 11, 1998, also raising claims unrelated to this petition.[6] It was denied by Judge Kurtis Wilder on December 26, 1998. The Michigan Court of Appeals denied the delayed application for leave to appeal on September 20, 1999 (Docket No. 217400). Petitioner did not apply for leave to appeal to the

---

[4] In Judge Brown's 2003 order, discussed below, he indicated that the Michigan Supreme Court denied leave to appeal in Petitioner's direct appeal on September 15, 1983. This, however, could not be confirmed with the Supreme Court clerk's office.

[5] Presumably, if Petitioner had raised the same claim he does here, that would have been indicated in the pertinent trial court orders denying his motions for relief from judgment.

[6] Petitioner claimed that his attorney was ineffective for not pursuing an insanity defense, for not informing the Department of Corrections that he was mentally ill, and for allowing him to plead in exchange for a sentence where the maximum sentence, due to good time and special good time reductions, would be served before the minimum sentence.

Michigan Supreme Court.[7]

Petitioner filed a second motion for relief from judgment in the trial court on October 8, 2002. As in the current petition, he challenged the validity of his plea and sentence on the ground that he was serving the murder and escape sentences consecutively, despite the promise that they would run concurrently. He further provided that the Department of Corrections had just recently informed him that the sentences had been imposed to run consecutively, and had just provided him with a copy of his judgment of sentence, which he had not seen before. Petitioner claimed he had also just learned that consecutive sentences were statutorily required, Mich. Comp. Laws § 768.7a. Judge Archie Brown denied the motion on January 6, 2003, holding that a successive motion for relief from judgment cannot be filed absent a retroactive change in the law or the discovery of new evidence since the filing of the original motion, Mich. Ct. Rule 6.502(G), and that Petitioner had claimed neither. The order further provided that the motion should not have been filed and should have been returned by the Clerk's office.

Petitioner filed yet another motion for relief from judgement in the trial court on February 11, 2003, raising the same issue, again arguing that the consecutive nature

---

[7] Respondent provided an affidavit from the Michigan Supreme Court clerk, stating that no appeal had been taken to that court from Court of Appeals docket numbers 217400 and 249297.

of his sentences was newly discovered. This was denied on April 1, 2003. Petitioner filed for rehearing on April 14, 2003, and this was denied on June 4, 2003.

On June 23, 2003, Petitioner filed a complaint for writ of habeas corpus[8] in the Michigan Court of Appeals, raising the same issue. On August 15, 2003, the Court of Appeals dismissed the complaint for lack of jurisdiction. *Pickens v. Dept. of Corrections (No. 249297).* Petitioner did not apply for leave to appeal this order.

On December 8, 2003, Petitioner filed a complaint for superintending control in the Michigan Court of Appeals, asking the court to order Judge Brown to decide the merits of his motion for relief from judgment. The Court of Appeals dismissed the complaint, by order dated December 19, 2003, for failure to pay the remainder of the filing fees due in his state habeas corpus case. *Pickens v. Washtenaw Circuit Judge* (No. 252566). Petitioner filed an application for leave to appeal this order on January 12, 2004. The Michigan Supreme Court denied the application on June 30, 2004. *Pickens v. Washtenaw Circuit Judge* (No. 125408).

Petitioner signed and dated the current petition for writ of habeas corpus on July 29, 2004. He continues to argue that the plea bargain was illusory and the sentence invalid because of the imposition of consecutive sentences, in

---

[8] Mich. Ct. Rule 6.502(G)(1) provides in part that, "A defendant may not appeal the denial or rejection of a successive motion." Presumably, Petitioner was trying to find an alternate legal route to challenge the denial of his motions for relief from judgment.

contravention of what he was promised. He again argues that the basis of his claim is newly discovered and that, until 2002, he was under the impression that his sentences were concurrent. In the petition, and in his answer to the Respondent's motion for summary judgment, he explains that he only learned that the escape and murder sentences were consecutive when, after 23 years of incarceration, he requested and was denied a reduction in security classification. He claims that he made repeated requests for an explanation of the denial, and when he was told that the sentences were consecutive, he tried to correct what he thought was an error by the Department of Corrections, and finally filed a grievance. He has attached to his petition, as he did to his motions in the lower court, a Department of Corrections "Grievance Response," dated September 22, 2002, that provides in part, "Since you are serving consecutive terms of incarceration... you are not entitled to be discharged form the DOC until such time as you have satisfied all of the consecutive maximum sentences as added together." Petitioner explains that the DOC attached a copy of his escape judgment of sentence to the Grievance Response, and that this was the first time he had seen this document and the first time that he understood that consecutive sentences had been imposed.

## II. Discussion

### A. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective on April 24, 1996. Among other things, the AEDPA established a one-year period of limitations for habeas petitions filed by state prisoners. See 28 U.S.C. § 2244(d). The limitation period runs from the later of four events, two of which are pertinent to this case.

The first is the date on which the judgment became final by the conclusion of direct review. § 2244(d)(1)(A). For inmates like Petitioner, whose convictions became final before the AEDPA was enacted, there was a grace period of one-year, or until April 24, 1997, to file habeas petitions. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir.2002); *Brown v. O'Dea*, 187 F.3d 572, 577 (6th Cir.1999), overruled on other grounds, 530 U.S. 1257, 120 S.Ct. 2715, 147 L.Ed.2d 980 (2000).

Petitioner did not file his habeas petition until July of 2004, long after the end of the grace period. While a properly filed application for state post-conviction relief will toll the limitations period, 28 U.S.C. § 2244(d)(2), it does not restart the clock. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir.2003). Petitioner filed his first motion for relief from judgment in 1998. By then, the one-year limitations period for filing a habeas petition had already expired, and resolution of the motion did not restart the limitations period. *Id.; Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir.2001). Nor did

the filing or resolution of any of his subsequent motions. As Respondent correctly argues, if the limitations period runs from the end of the grace period, the petition would be time-barred.

The second possible triggering event here is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S. § 2244(d)(1)(D). The question under this provision is not when a prisoner first learned of the new evidence; it is when he should have learned of the new evidence had he exercised reasonable care. *See Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir.2000); *Townsend v. Lafler*, 99 Fed.Appx. 606, 608 (6th Cir. 2004) (unpublished opinion). A habeas petitioner has the burden of persuading a federal court that he exercised due diligence in discovering the factual predicate of his habeas claims. *Stokes v. Leonard*, 36 Fed. Appx. 801, 804 (6th Cir.2002) (unpublished opinion).

Petitioner claims that the triggering event was in 2002, when the Department of Corrections told him the sentences were consecutive and provided him with a copy of the escape judgment of sentence. Respondent did not address this claim in his motion for summary judgment. Unquestionably, Petitioner was misled by the prosecutor, the judge, and his attorney, at the plea and sentencing, and it does not appear that he was informed of the change when the sentence was entered as consecutive to the murder on the judgment of sentence. This being the case, the

question becomes whether Petitioner's justifiable reliance on what he was told at the plea and sentencing constituted "reasonable care" and that no further efforts were required on his part, so that the statute of limitations would begin on the date of discovery.

Even if Petitioner convinces this Court that he used the requisite diligence in discovering the factual predicate of his claim, the next question that needs to be addressed is whether or not Petitioner timely filed his petition for habeas corpus after discovering that the sentences were consecutive. The first motion for relief from judgment presenting this claim was filed on October 8, 2002, and denied on January 6, 2003, and the petition was filed more than a year later. The parties are directed to address whether or not Petitioner's subsequent motions in the trial court and original actions in the Michigan appellate courts tolled the one-year limitations period, under § 2244(d)(2): "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation..."

### B. Equitable Tolling

Lastly, the parties are directed to address the question of equitable tolling. Because the habeas statute of limitations is not jurisdictional, a petitioner who misses the deadline may still be allowed to proceed if the court decides that equitable tolling is appropriate. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir.2004).

"In essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan v. Bagley,* 400 F.3d 417, 421 (6th Cir.2005), quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir.2000). A litigant who seeks equitable tolling generally "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, __ U.S. __, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005).

Although the Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations," *id.* n.8, the United States Court of Appeals for the Sixth Circuit has concluded "that equitable tolling does apply to the one-year limitation period applicable to habeas petitions." *Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir.2001). The factors to be considered are: (1) the petitioner's lack of actual notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim. *Id.* at 1008; *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). These factors are not necessarily comprehensive and they are not all relevant in all cases.

11


*Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.2002).

## III. APPOINTMENT OF COUNSEL

A habeas petitioner may obtain representation at any stage of the case "[w]henever the United States magistrate or the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). In light of all of the above, the Court determines that the interests of justice require the appointment of counsel.

## IV. Conclusion

Petitioner filed the petition for writ of habeas corpus well beyond the AEDPA's one year grace period. Nonetheless, Petitioner argues that the limitations period should run from the date he discovered that the murder and escape sentences were consecutive. Because Respondent has not yet addressed this argument, and because Petitioner has established that he was misled by the Court, counsel, and the prosecutor at the plea and sentence, the motion for summary judgment is denied.

Petitioner, through appointed counsel, is directed to file a supplement to his petition, addressing (1) whether the pleadings he filed after the January 6, 2003 order disposing of the first motion for relief from judgment that raised the current claim toll the statute of limitations under § 2244(d)(2); (2) whether Petitioner is entitled to equitable tolling of the statute of limitations; and (3) any other questions pertinent to resolution of this petition. Respondent is ordered to file an answer, addressing (1) & (2) above, and (3) whether the statute of limitations should begin

to run from the date Petitioner discovered he had been sentenced to consecutive sentences, (4) the merits of Petitioner's challenge to his plea and sentence, and (5) any other questions pertinent to resolution of this petition.

**IT IS ORDERED** that Respondent's Motion for Summary Judgment and Dismissal is **DENIED;**

**IT IS FURTHER ORDERED** that Petitioner is appointed counsel through the Federal Defender Office;

**IT IS FURTHER ORDERED** that Petitioner shall file a supplement to petition for writ of habeas corpus, as directed above, within 60 days of the date of this order;

**IT IS FURTHER ORDERED** that Respondent shall file an answer, as directed above, within 30 days of receipt of Petitioner's supplement to petition;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the Washtenaw County Prosecuting Attorney, as party to the original plea and sentence agreement.

        s/Arthur J. Tarnow
        Arthur J. Tarnow
        United States District Judge

Dated:  August 16, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 16, 2005, by electronic and/or ordinary mail.

        s/Catherine A. Pickles
        Case Manager